HOLLOWAY et al. v. PURINGTON.
(No. 422.)

(Court of Civil Appeals of Texas. El Paso. March 25, 1915. Rehearing Denied April 15, 1915.)

1. ADVERSE POSSESSION ⬡⇒43—DISAVOWING TITLE OF OWNERS.

Where N. took possession of land without being in a fiduciary relation to, or recognizing the title of, plaintiffs, it was not necessary for N., when thereafter recognizing P. as owner, by taking a lease from her, to disavow plaintiffs' title, in order for P. through N. to hold adversely to plaintiffs.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 213–224; Dec. Dig. ⬡⇒ 43.]

2. ADVERSE POSSESSION ⬡⇒13—TITLE UNDER FIVE YEARS' STATUTE.

P., having a recorded tax deed, and five years' possession through a tenant, all the time paying the taxes, acquired title under the five-year statute.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76; Dec. Dig. ⬡⇒ 13.]

Appeal from District Court, Pecos County; W. C. Douglas, Judge.

Action by Sam Holloway and others against Mary L. Purington. Judgment for defendant, and plaintiffs appeal. Affirmed.

Sanford & Wright, of Eagle Pass, and Howell Johnson, of Ft. Stockton, for appellants. W. C. Jackson, of Ft. Stockton, for appellee.

WALTHALL, J. This is a suit in trespass to try title to section 1 in block No. 108, S. A. & M. G. Ry. Co., original grantee, in Pecos county, Tex. Plaintiffs' petition was in the usual form of trespass to try title. Defendant pleaded not guilty, the general denial, and the five-year statute of limitation. The case was tried before the court without a jury. The court rendered judgment for the defendant. At the request of the parties, the trial court made and filed findings of fact, and thereon concluded as a matter of law:

"That the plaintiffs have title from the sover· eignty of the soil, but that their said title is defeated under the facts found, by defendant's plea of five years' statute of limitation."

[1] The appellants make but one assignment of error, as follows:

"The court erred in the first conclusion of law in that holding wherein he holds that plaintiffs' title is defeated under the five-year statute of limitation."

The first proposition under the assignment is that:

"Where possession of land is taken by one who claims no right to the land or its use, neither as tenant nor otherwise, his holding is subordinate to the title of the owner, and he cannot attorn to a stranger, so as to make his possession adverse to the title of the true owner, unless he repudiate such title and bring notice home to him, or his change of attitude be shown by such hostile, open, and notorious possession evidenced by plain and unmistakable circumstances of record or on the ground, that plaintiff ought to have known that the holding had become adverse."

The facts found by the trial court referring to the defense of limitation are:

"(a) Deed from John Edgar, as tax collector of Pecos county, Tex., to George W. Purington, dated the 17th day of July, 1885, conveying the land herein sued for, reciting that it was sold by him under summary seizure for unpaid taxes of unknown owner for the year 1884. Said deed

was duly recorded in the deed records of Pecos county, Tex., on the 3d day of September, 1888.

"(b) That the defendant, Mary L. Purington, is the widow of said George W. Purington.

"(c) That the defendant, Mary L. Purington, paid the taxes upon said land each and every year as they accrued from 1893 to 1913, inclusive.

"(d) Written lease from Mary L. Purington to J. H. Nations to the land in question, dated January 24, 1905, for five years from its date. This lease was never placed of record.

"(e) It was shown by the testimony of H. N. Patterson, manager for the J. H. Nations' ranch, that in June or July, 1905, J. H. Nations purchased the ranch comprising the pasture (a large one) in which the section of land in controversy was then situated. Nations, within a few days thereafter, went into possession of said ranch. The said pasture was under fence at that time, and the said section remained in said pasture about one year after the date of the purchase (there being a fence along the east line of said section at all times) at which time a division fence was made which threw the said section into a smaller pasture. In the fall of 1906 or spring of 1907, Nations and one Forbes made a blocking agreement. Under this said agreement, said section was cut off into the Forbes pasture, and Nations permitted the said Forbes to use said section in return for the use by Nations of a section of land belonging to Forbes in the Nations pasture. Nations continued to make the rental payments to defendant during the life of the lease, and did not assign the said lease to Forbes.

"(f) Said section was used continuously by Nations, and afterwards by Forbes as shown above, for grazing cattle during the life of said lease. Nations claims no right to said land or its use, except under and by virtue of the lease, aforesaid; and the witness Patterson testified upon the trial that Nations claimed no interest or right to use the section prior to the execution of the lease aforesaid. The Forbes pasture, into which the section of land in question was cut off under the 'blocking' agreement, was entirely inclosed and under the control of Forbes. The fence upon the north line of the Nations pasture is owned by the Elsinore Cattle Company, and a gate in this fence is controlled by said company, and Nations pays said company for the use of said fence."

The findings of fact by the trial court do not show that Nations took possession or went into possession of the section of land in controversy under any character of recognition or admission of title in appellants by declaration, conduct, or otherwise. Without some recognition or admission of title in appellants, he, or one whom he recognizes as owner, could hold through him adversely to appellants, without any disclaimer or disavowal of title in appellants. Unless there was some fiduciary relation established between Nations and appellants when he took possession, there would be nothing to disclaim or disavow. To invoke the rule claimed by appellants that Nations, or Mrs. Mary L. Purington, whom he afterwards recognized as the owner, could not hold adversely to appellants, unless he (Nations) first repudiate the title under which he first took possession and give notice to appellants of his repudiation of their title, would necessarily carry with it the idea that he, in taking possession had recognized the title to be in appellant and was holding in subordination to such title. But the facts do not show such condition. The facts show that Nations never at any time recognized or admitted title in any other person or sustained any fiduciary relations of any character whatever to any person other than appellee, and that he did admit title in her and held possession for her as tenant for five consecutive years before the filing of the suit. The facts found by the court show that, before Nations took a lease from appellee, he "purchased the ranch comprising the pasture (a large one) in which the section of lands in controversy was then situated"; but the facts do not show that the purchase of the pasture was from appellants or from any one in privity with them, so as to show a recognition of their title in the purchase of the pasture.

[2] The facts found by the trial court are sufficient to establish title in appellee to the land in controversy under the five-year statute of limitation. The assignment is overruled.

We think it unnecessary to pass upon appellee's cross-assignment.

Finding no error, the case is affirmed.